# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**JOSEPH HOWARD,**

    **Petitioner,**

v.             Case No. 19-CV-227

**DYLON RADTKE,**[1]

    **Respondent.**

## DECISION AND ORDER

    Joseph Howard is incarcerated at the Green Bay Correctional Institution in the custody of its warden, Dylon Radtke. Howard was convicted in Milwaukee County Circuit Court of armed robbery, being a felon in possession of a firearm, and first-degree reckless injury. After exhausting his remedies in the state courts (ECF Nos. 13-5, 13-7), Howard filed a petition for a writ of habeas corpus in this court (ECF No. 1; *see also* ECF No. 2 (brief in support)).

---

[1] Howard is incarcerated at the Green Bay Correctional Institution. *See* Offender Locator, Wisconsin Department of Corrections, available at https://appsdoc.wi.gov/lop/detail.do (last visited Sept. 3, 2019). The warden of that institution is Dylon Radtke. *See* https://doc.wi.gov/Pages/OffenderInformation/Adult Institutions/GreenBayCorrectionalInstitution.aspx. Therefore, in accordance with Rule 2(a) of the Rules Governing Section 2254 Cases and Fed. R. Civ. P. 25(d), the caption is updated accordingly

A federal court may consider habeas relief for a petitioner in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Following the passage of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), a federal court generally may grant habeas relief only if the state court decision was "either (1) 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States,' or (2) 'based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Miller v. Smith*, 765 F.3d 754, 759-60 (7th Cir. 2014) (quoting 28 U.S.C. § 2254(d)(1), (2)).

Early on the morning of August 9, 2014, a woman and her cousin had just parked their car and were heading toward a Milwaukee bar when a man came up to her, grabbed the strap of her purse, and said, "Give me your purse, bitch." (ECF No. 13-10 at 11.) Noticing that the man had a gun pointed at her, she gave him her purse. (ECF No. 13-10 at 12.) The robber then raised the gun to the head of the victim, who, fearing for her life, closed her eyes. (ECF No. 13-10 at 13.) When nothing happened, she opened her eyes and saw the robber lower the gun and aim it at her leg. He then shot the victim in the left leg just above her knee. (ECF No. 13-10 at 13-15.) The robber then walked away. (ECF No. 13-10 at 15.)

The victim's cousin drove her to the hospital (ECF No. 13-10 at 19) and the police were contacted. Police officers responded to the area of the robbery to look for evidence

2

that might be associated with the crime. In the surrounding neighborhood an officer found an empty red cosmetics bag, the apparent contents of which were found about six or seven feet away. The officer also found a set of keys, and approximately about 75 yards away found a white iPhone in an alley next to a home. (ECF No. 13-9 at 58, 68-69.) The victim confirmed that these items belonged to her and were taken from her in the robbery. (ECF No. 13-10 at 24-25, 43-44.)

The witnesses' descriptions of the robber were inconsistent as to certain details. The victim described him as "African American," "a little taller than me," clean shaven, wearing a white T-shirt and jeans and with his hair "cut low," about an inch in length and in a natural style (ECF No. 13-10 at 12, 36, 39, 81.) Her cousin testified that the robber wore a hat and so she did not see his hair. (ECF No. 13-10 at 57.) But when previously questioned by a detective, she said he was not wearing a hat but "had a short Afro with shaved sides." (ECF No. 13-10 at 75-76.) The victim testified that the robber "had a little bit of a mustache," and when she said he was "clean shaven" she meant only that he did not have a beard. (ECF No. 13-10 at 39.) When both victims were shown photographic lineups several months later, neither was able to identify a suspect. (ECF No. 13-10 at 30.)

A latent fingerprint examiner found a fingerprint on the victim's cell phone. (ECF No. 13-11 at 20.) A different examiner entered the print into the Automated Fingerprint Identification System, which identified 20 possible matches. (ECF No. 13-11 at 28-29.)

The examiner reviewed the first possible match and concluded it was a match to the print found on the victim's iPhone. That fingerprint belonged to Howard. (ECF No. 13-11 at 29.)

Howard was arrested and questioned by police. He denied finding a cell phone, and specifically denied finding a phone, picking it up, and then putting it back down. (ECF No. 13-10 at 73.) He stated that, if had found a phone and no one was around, he would have kept it. (ECF No. 13-10 at 74.)

Essentially the only evidence against Howard was the fingerprint on the victim's iPhone. As his sole claim for relief, Howard argues that the fingerprint evidence was constitutionally insufficient to sustain his conviction.

"The applicable Supreme Court precedent regarding the sufficiency of the evidence is well established: 'whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Saxon v. Lashbrook*, 873 F.3d 982, 987-88 (7th Cir. 2017) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

Howard does not argue that it was not his fingerprint on the victim's iPhone, much less present evidence to support any such argument. Rather, as the court understands Howard's argument, he contends there might be an innocent explanation for how his fingerprint came to be on the phone other than him having committed the

4

robbery and shooting. Because the state did not negate those explanations, he argues he could not be convicted.

Howard points to *Borum v. United States*, 127 U.S. App. D.C. 48, 380 F.2d 595 (1967), in support of his argument. In *Borum*, the defendant's conviction for housebreaking was based on his fingerprints having been found on a jar in the victim's home that had contained a coin collection. *Id.* at 595-96. A divided panel of the Court of Appeals for the D.C. Circuit reviewing the conviction on direct appeal reversed the defendant's conviction, noting that the government offered no evidence to support a conclusion that the defendant touched the jar in the course of the burglary. *Id.* at 597. Rather, the court concluded, it was possible the defendant touched the jar before it ever came into the victim's possession. *Id.*

However, *Borum* is not binding on this court, involved the very different standard of review applicable on direct appeal rather than on a state habeas claim, and is factually distinguishable. *See Woods v. Kemper*, No. 13-CV-973, 2014 U.S. Dist. LEXIS 23080, at *12 (E.D. Wis. Feb. 24, 2014) (distinguishing *Borum*); *see also Gibson v. Collins*, 947 F.2d 780, 782 (5th Cir. 1991) (distinguishing *Borum* and similar cases due to standard of review). In fact, the majority decision in *Borum* has been criticized, with one judge of the Court of Appeals for the Seventh Circuit calling it "hypertechnical" and in "conflict[] with the well-settled rule that a jury verdict must be sustained if 'after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of

fact could have found the essential elements of the crime beyond a reasonable doubt.'" *United States v. Bush*, 749 F.2d 1227, 1234 (7th Cir. 1984) (Coffey, J., dissenting) (emphasis in original) (quoting *United States v. Moya*, 721 F.2d 606, 609 (7th Cir. 1983)).

In *United States v. Bush*, 749 F.2d 1227 (7th Cir. 1984), the defendant was convicted of bank robbery based almost exclusively on the fact that his fingerprints were found on two boxes that were in the bank's vault. The defendant had never been an employee or customer of the bank. *Id.* at 1229. The Court of Appeals for the Seventh Circuit implicitly rejected *Borum* and found the fingerprint evidence sufficient to sustain the conviction. *Id.* at 1230 ("But whether or not we would have decided the same as the *Borum* court if presented with identical facts, we conclude here that the evidence did not establish reasonable doubt as a matter of law, and the jury was left free to make a finding of guilt beyond a reasonable doubt.").

The mere possibility that there could be an innocent explanation for Howard's fingerprint on the victim's iPhone "does not compel, as a matter of law, a reasonable doubt." *Id.* at 1229; *see also United States v. Lonsdale*, 577 F.2d 923, 927 (5th Cir. 1978) ("the government need not negate all hypotheses explaining the fingerprint in a manner consistent with innocence"). The jury could call upon its personal experience and recognize that, unlike an object like the jar in *Borum*, which might be handled by employees or customers at a store before it came into the victim's home, a cell phone is traditionally sold sealed in a box. It is an object that is private and valuable to its owner,

6

both monetarily and practically, such that she is unlikely to allow a stranger to handle it. Moreover, should a stranger handle the phone, it is unlikely that, with an owner's frequent handling, any errant fingerprint would last long before it is smudged or wiped away. (*Cf.* ECF No. 13-10 at 26 (victim testifying she alone used the phone and no one else's fingerprints should be on the phone).)

The only plausible innocent explanation—that Howard came across the abandoned phone, picked it up, and then discarded it—was one he expressly disavowed in his statement to a detective. But even setting that aside, this theoretical possibility was insufficient to create reasonable doubt as a matter of law. The phone was recovered nearby and shortly after the early-morning robbery. Given the time of day and short amount of time it was abandoned, it was unlikely that an innocent person stumbled upon it, handled it, and then discarded it. Thus, the jury could reasonably find beyond a reasonable doubt that Howard robbed and shot the victim.

Viewing the evidence in the light most favorable to the prosecution, a reasonable finder of fact could have easily found the essential elements of the charged crimes beyond a reasonable doubt. Therefore, Howard is not entitled to federal habeas relief; the court of appeals' decision affirming his conviction was not an unreasonable application of clearly established federal law.

Finally, the court concludes that Howard has failed to make a substantial showing of a denial of constitutional right. *See* 28 U.S.C. § 2253(c)(2); Rule 11 of the

Rules Governing Section 2254 Cases. Therefore, the court will deny him a certificate of appealability.

**IT IS THEREFORE ORDERED** that Howard's petition for a writ of habeas corpus is denied and this action is dismissed. The court denies Howard a certificate of appealability. The Clerk shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 6th day of September, 2019.

_____
WILLIAM E. DUFFIN
U.S. Magistrate Judge